FILED

JUL - 2 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case: 1:07-mc-00281 |
| | ) | Assigned To : Huvelle, Ellen S. |
| SCOTT THOMPSON | ) | Assign. Date : 7/2/2007 |
| | ) | Description: Miscellaneous |
| Defendant. | ) | |
| _____ | ) | |

**FEDERAL ENERGY REGULATORY COMMISSION'S RESPONSE TO
JUNE 6, 2007 SUBPOENA FOR PRODUCTION OF DOCUMENTS AND,
ALTERNATIVELY, MOTION TO QUASH**

Pursuant to Rule 17 of the Federal Rules of Criminal Procedure, on June 6, 2007, the Court issued

a subpoena directing the Federal Energy Regulatory Commission (FERC) to produce, inter alia,

documents submitted by the Williams Corporation to FERC as part of an investigation addressing natural

gas trade reporting inaccuracies. (Dkt. No. 14.) As explained below, FERC fulfilled its obligations as to

the subpoena because it informed the Defendant that the requested documents are publicly available

online. In the alternative, the agency moves the Court to quash the subpoena because the documents are

publicly available.

A.  FERC complied with the terms of the subpoena.

FERC complied with the subpoena requirements.  All documents subpoenaed by the Defendant

from FERC are available and readily accessible to the public and the Defendant via FERC's website at:

http://www.ferc.gov/industries/electric/indus-act/wec/enron/info-release.asp.   FERC first directed the

public availability of this material and related documents by order dated March 21, 2003, which predates

Defendant's subpoena.  *See Order Directing The Release of Information*, 102 F.E.R.C. ¶ 61, 311 (Mar.

21, 2003) (see Attachment).

FERC representatives informed counsel for the Defendant of the public availability of these

documents during a telephone conference on June 15, 2007, and in a follow-up telephone conference on

June 19, 2007.  In addition, during the June 15, 2007 telephone conference, representatives for the agency

instructed counsel for the Defendant on the steps required to access the website and assisted with an online search for documents. An initial online search resulted in 6,800 documents referencing the Williams Corporation.

Further, the Defendant stated in a June 7, 2007 cover letter accompanying the subpoena that, in lieu of a Court appearance, FERC could satisfy the subpoena by producing requested materials no later than close of business on June 21, 2007. Given the public availability of the documents and the steps taken by FERC prior to June 21, 2007 to facilitate the Defendant's access to such documents, FERC fulfilled its duty and fully complied with the terms of the subpoena. *See United States v. Ball*, 49 F.R.D. 153, 156 (1969) (recognizing that "[t]he government need not supply a defendant with documents to which he has equal access or to describe their contents in a bill of particulars"). Therefore, no further action is required on FERC's part and a court appearance is unnecessary according to Defendant's June 7, 2007 cover letter.

B.  The subpoena should be quashed.

Alternatively, the Court should quash the subpoena because the documents subpoenaed are available to the public online. According to the requirements for issuance of a subpoena under Rule 17, the proponent must establish that the subpoenaed materials are not available from any other source. See *United States v. Eden*, 659 F.2d 1376, 1381 (9th Cir. 1981) (recognizing that in addition to establishing relevancy, admissibility and specificity, "the proponent must also demonstrate that the subpoenaed



materials are not available from any other source"). Clearly, in this case, the Defendant failed to establish

that the subpoenaed documents are not otherwise available to him given their availability to the public

online. Therefore, the subpoena should be quashed.

Respectfully submitted,

Ellen K. Schall,
Associate General Counsel
DC Bar No. 221770

Charles A. Beamon,
Deputy Associate General Counsel

Marcos A. Araus
Staff Attorney
Federal Energy Regulatory Commission
888 First Street, NE
Room 91-36
Washington, DC 20426
(202) 502-8472

3

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of July 2007, a true copy of the foregoing Federal

Energy Commission's Response to June 6, 2007 Subpoena for Production of Documents and,

Alternatively, Motion to Quash was sent via electronic mail to:


Adrian D. Mebane, Esquire
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004

Amanda L. Riedel
Trial Attorney
U.S. Department of Justice
Criminal Division, Fraud Section
10th & Constitution Avenue, NW
Bond Building, 4th Floor
Washington, DC 20530

By: _____
Marcos A. Araus
Staff Attorney
Federal Energy Regulatory Commission
888 First Street, NE
Room 91-36
Washington, DC  20426
(202) 502-8472

# ATTACHMENT

FILED

JUL - 2 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

07 mc 281

20030321-3018 Issued by FERC OSEC 03/21/2003 in Docket#: PA02-2-000

UNITED STATES OF AMERICA 102 FERC ¶ 61,311
FEDERAL ENERGY REGULATORY COMMISSION

Before Commissioners: Pat Wood, III, Chairman;
            William L. Massey, and Nora Mead Brownell.

| | |
|---|---|
| Fact Finding Investigation of Potential Manipulation of Electric and Natural Gas Prices | Docket No.   PA02-2-000 |
| San Diego Gas & Electric Company,<br>            Complainant,<br>      v. | Docket No.   EL00-95-048 |
| Sellers of Energy and Ancillary Services Into Markets Operated by the California Independent System Operator and the California Power Exchange,<br>            Respondents. | |
| Investigation of Practices of the California Independent System Operator and the California Power Exchange | Docket No.   EL00-98-042 |
| Puget Sound Energy, Inc., et al.<br>            Complainant,<br><br>      v. | Docket No.   EL01-10-007 |
| All Jurisdictional Sellers of Energy and/or Capacity at Wholesale into Electric Energy and/or Capacity Markets in the Pacific Northwest, Including Parties to the Western Systems Power Pool Agreement<br>            Respondent. | (Not Consolidated) |

20030321-3018 Issued by FERC OSEC 03/21/2003 in Docket#: PA02-2-000

PA02-2-000, EL00-95-048, EL00-98-042, EL01-10-007 (not consolidated)          - 2 -

## ORDER DIRECTING THE RELEASE OF INFORMATION

### (Issued March 21, 2003)

1.      On March 5, 2003, the Secretary of the Commission issued a notice that the
Commission intended to release (1) all documents submitted in Docket No. PA02-2-000,
except documents obtained from other Federal agencies in accord with the Federal
Records Act, 44 U.S.C. § 3510(b), and (2) all documents submitted in response to the
Commission's November 20, 2002 and February 10, 2003 orders in Docket Nos. EL00-
95-048, EL00-98-042, and EL01-10-007.  The Commission received 18 comments in
response to the March 5 Notice.[1]  A list of those respondents is appended to this order.

2.      For the reasons set forth below, the Commission is ordering the release of all of
the information covered by the March 5 Notice, no sooner than five days from the
issuance of this order, but in no event before March 26, 2003.

### Background

3.      On February 13, 2002, in Docket No. PA02-2-000, the Commission issued an
order directing Staff to conduct an investigation to determine whether any entity
manipulated short-term prices for electric energy or natural gas in the West, or otherwise
exercised undue influence over wholesale electric prices in the West.[2]  In the course of
this investigation, Staff collected data and conducted discovery concerning the
functioning of energy markets in the Western United States during 2000 and 2001.  On
August 13, 2002, Staff issued its Initial Report on Company-Specific Separate

---

[1]At least 200 jurisdictional and non-jurisdictional entities submitted information in
PA02-2-000.  As a general matter, every natural gas and electric jurisdictional company
involved in the Western markets was asked to submit information of one kind or another,
and most asked for confidential treatment of the submitted information.  Thirteen
companies or groups submitted information in the first round of responses to the
November 10 and February 10 orders in EL00-95-048, EL00-48-042, and EL01-10-007.
For the most part, these filers too sought confidential treatment of their filings.

    The records in these dockets are immense.  In PA02-2-000 alone, the electronic
records comprise over 2 terabytes of data, which would fill 1.5 million floppy diskettes
or 3,341 compact diskettes.

[2]*Fact-Finding Investigation into Possible Manipulation of Electric and Natural
Gas Prices*, 98 FERC ¶ 61,165 (2002).

20030321-3018 Issued by FERC OSF 03/21/2003 in Docket#: PA02-2-000

PA02-2-000, EL00-95-048, EL00-98-042, EL01-10-007 (not consolidated)        - 3 -

Proceedings and Generic Reevaluations; Published Natural Gas Price Data; and Enron Trading Strategies, as part of that investigation.  The Commission anticipates the issuance of a Final Report on these matters in the near future.

4.     On November 20, 2002, the Commission issued an order in Docket Nos. EL00-95-048 and EL00-98-042 that allowed the parties in that proceeding to conduct additional discovery into market manipulation by various sellers during the western power crisis of 2000 and 2001, and specified procedures for adducing this information (Discovery Order).[3]  The Discovery Order also required that no later than February 28, 2003, the parties submit directly to the Commission additional evidence and propose new or modified findings of fact with specific citations to the record to support any proposed substantive recommendations.[4]  On February 10, 2003, the Commission issued an order affording the parties the opportunity to respond to submissions made by adverse parties (Rehearing Order).[5]  The Rehearing Order allowed parties until March 17, 2003, to file reply comments directly with the Commission.[6]   (Together, these responses are referred to as the Hundred Day Filings.)  The Commission also anticipates issuing an order in the near future with respect to the issues in these dockets.

## Discussion

5.     As an initial matter, the Commission is required to give submitters of information for which confidentiality has been requested an opportunity to comment if a request for information has been submitted under the Freedom of Information Act (FOIA), 5 U.S.C.

---

[3] *San Diego Gas & Elec. Co. v. Sellers of Energy and Ancillary Serv., et al.*, 101 FERC ¶ 61,186 (2002).

[4] By Order dated February 24, 2003, the Commission extended the February 28, 2003 deadline to March 3, 2003.  *See San Diego Gas & Elec. Co. v. Sellers of Energy and Ancillary Serv., et al.*, 102 FERC ¶ 61,194 (2003) (February 24 Order).

[5] *San Diego Gas & Elec. Co. v. Sellers of Energy and Ancillary Serv., et al.*, 102 FERC ¶ 61,164 (2003).  On the same day, the Commission expanded the coverage of these responses to include the proceeding in EL01-10-007.  *Puget Sound Energy, Inc., et al. v. All Jurisdictional Sellers of Energy and/or Capacity at Wholesale into Electric Energy and/or Capacity Markets in the Pacific Northwest, Including Parties to the Western Systems Power Pool Agreement*, 102 FERC ¶ 61,163 (2003).

[6] The February 24 Order extended the March 17, 2003, deadline to March 20, 2003.

PA02-2-000, EL00-95-048, EL00-98-042, EL01-10-007 (not consolidated)          - 4 -

§ 552.  In addition, the Commission may give, and as a general practice does give, submitters of purportedly confidential information the same opportunity outside the FOIA context.  Here, the Commission is not responding to a FOIA request,[7] but rather is considering the release of information for which confidential treatment has been requested in furtherance of its statutory responsibilities to ensure just and reasonable rates for customers of public utilities and natural gas companies.  Consistent with our general practice, the Commission gave submitters of that information an opportunity to comment to assure that their concerns regarding the release of the information were fully ventilated and addressed.

6.     After reviewing the responses, the Commission remains convinced that the release of the information, as qualified below, is necessary and in the public interest.  The crisis in the 2000-2001 western energy markets, in particular in California, has been the subject of many state and Federal inquiries and investigations that have implicated the market information, *inter alia*, that the Commission will be releasing.  Up to this point, the Commission chose to maintain the confidentiality of the information as requested by the submitters of the information, because it was conducting its own investigations, which could have been impeded by the premature release of the information.  Soon, the Commission will finalize its report in PA02-2-000, and also will issue several orders regarding those investigations.  Therefore, the release of the information now will enable the public to understand better the evidentiary record on which the Commission's decisions in those proceedings are grounded.  Also, any further proceedings in these matters addressing information in the instant dockets will benefit from the release of the information, which will assist in framing the issues and in expeditious resolution of such cases.[8]

---

[7] There are six outstanding FOIA requests for parts of the PA02-2-000 data and the Hundred Day Filings, but none of these requests encompasses the breadth of information the Commission plans to release here.

[8] To the extent any of the information ordered to be released by this order is subject to protective orders in on-going Commission proceedings, those protective orders are modified or superseded by this order.  The affected dockets include, but are not limited to, No. EL99-93, No. EL00-95-45, No. EL01-10, No. EL02-26, *et al.*, No. EL02-60, *et al.*, No. EL02-80, *et al.*, No. EL02-113, No. EL02-114, No. EL02-115, No. EL03-17, No. ER00-2019, No. ER01-819, No. ER01-889, No. ER01-2998, No. ER02-456, No. ER02-925, No. ER03-37, and No. RP00-241-000.

20030321-3018 Issued by FERC OSEC 03/21/2003 in Docket#: PA02-2-000

PA02-2-000, EL00-95-048, EL00-98-042, EL01-10-007 (not consolidated)          - 5 -

7.      Two respondents to the March 5 Notice unequivocally supported release of both sets of data.[9]  They pointed out, *inter alia*, that the public has a right to see the documents on which the California parties and other parties in the Hundred Day Filings are relying and that the public would be well-served by the release of the documents collected in Docket No. PA02-2-000.[10]  Lack of transparency in these proceedings, according to this respondent, has resulted in "an atmosphere of suspicion and misinformation."[11]  While the Commission does not concur in that characterization of the "atmosphere," as maintaining the confidentiality of the information during investigations was critical to the furtherance of its regulatory mission, release of the information will now allow the public a clearer view of the basis for the Commission's determinations that are currently pending and subject to resolution in the near future.

8.      While not necessarily agreeing to the release of the information, several respondents expressed concerns about the timing of the release of the documents, arguing, *inter alia*, that the Commission should release all the information at the same time,[12] should not release the data until after the responses to the Rehearing Order are filed on March 20,[13] should not release the data until after the Commission has decided

---

        [9]Northern California Power Agency, at p. 2; Public Utility District No. 1 of Snohomish County, Washington, at pp.7-9.  Other respondents did not oppose the release of the data in one or the other proceeding.  See Portland General Electric Company, at p. 2 (no opposition to release of PA02-2-000 data); Williams Energy Marketing & Trading Company, at p. 2 (no opposition to release of data in the Hundred Days Filings as long as release is fair and equitable); Duke Energy Corporation, *et al.*, at pp. 2-3 (no opposition to release of data as long as release is fair and equitable); City of Vernon, California, at pp. 2-3 (same).

        [10]See Northern California Power Agency, at p. 2.

        [11]*Id.*

        [12]Williams Energy Marketing & Trading Co., at p. 2; Duke Energy Corporation, *et al.*, at pp. 2-3; City of Vernon, California, at pp. 2-3.

        [13]Northern California Power Agency, at p. 2; Williams Energy Marketing & Trading Co., at p. 2; IDACORP Energy L.P., et al., at pp. 5-6; Duke Energy Corporation, *et al.*, at pp. 2-3

PA02-2-000, EL00-95-048, EL00-98-042, EL01-10-007 (not consolidated)          - 6 -

the cases,[14] should not release the information until the submitters (or at least these submitters) have had an opportunity to review what will be released,[15] and should provide a certain amount of time between the announcement of the release and the actual release to seek judicial intervention.[16]  The Commission does not intend to stagger the release of the affected information, but will release it immediately after concluding critical stages of the relevant proceedings through the issuance of Commission decisions on these matters.  The Commission wants the public to have access to the entire record underlying any decision in these proceedings.  This order also gives parties time to seek judicial intervention.  The information will be released not sooner than five days from the issuance of this order and in no event before March 26, 2003, the day on which the Commission has scheduled consideration of orders and other matters that fall within the scope of the dockets covered by the March 5 Notice.  Affected companies and other entities have, in fact, been on notice of the Commission's intention to release for more than two weeks since the issuance of the March 5 Notice.[17]  It is neither necessary nor

[14]El Paso Merchant Energy, L.P., at p. 4; Merrill Lynch Capital Services, Inc., at p. 2; Duke Energy Corporation, et al., at p. 6;

[15]Dynegy Power Marketing, Inc., at p. 1; Californians for Renewable Energy (CARE), at p. 4; Williams Energy Marketing & Trading Co., at p. 3; Duke Energy Corporation, et al., at pp. 7-8; UBS AG, at p. 4.

[16]Dynegy Power Marketing, Inc., at p. 8 (5 days); El Paso Electric Company, at p. 7 (21 days); Williams Energy Marketing & Trading Co., at p. 2 (reasonable amount of time); Dynegy Power Marketing, Inc., at p. 2 (seven days after receipt of responses to Rehearing Order).  City of Tacoma and Port of Seattle (at pp. 3-4), which seemingly support the release of the data, express concern that the Commission failed to provide the 30-day notice as required by Section 553(c) of the Administrative Procedure Act, 5 U.S.C. § 553(c).  That section, however, applies to informal or notice-and-comment rulemaking, which is inapplicable to the instant matters.  The PA02-2-000 docket involves an inquiry by the Commission into price manipulation for the purposes of preparing a report, and the Hundred Day Filings concern complaint proceedings initiated by several companies and groups, beginning in 1999.  The Commission has appropriately followed the process laid out in Section 388.112 of its own regulations pertaining to the release of confidential information.  See 18 C.F.R. 388.112.  That regulation requires only that the Commission provide at least five days notice before releasing such information.

[17]Also, since the initiation of the EL00-95 docket in 2000, the Commission has
(continued...)

PA02-2-000, EL00-95-048, EL00-98-042, EL01-10-007 (not consolidated)        - 7 -

appropriate in these circumstances to delay the release of the information solely to give
submitters an opportunity to review their submitted documents again.  Except as
explicitly noted in this order, the Commission plans to release all of the submitted
information.  The companies should know what they submitted, and have no right to
object to the release of any other entity's submissions.  Accordingly, delay for further
review is unnecessary and inappropriate.

9.        Other respondents objected to the release of discrete parts of their submittals, but
proffered no specific legal basis for withholding the information other than to allude to
the concepts underpinning FOIA Exemption 4, which protects from public disclosure
"trade secrets and commercial or financial information obtained from a person and
privileged or confidential."[18]  Some argue generally that the Commission should not
release information that is commercially sensitive,[19] that the Commission should not
release information in regard to ongoing contracts,[20] that the information is not the type
that they would normally release voluntarily,[21] and that the Commission should limit the
release by geographic and temporal scope, i.e., the Western wholesale electricity markets
for the period 2000 and 2001 to limit the impact on competition.[22]  Others made pleas
with respect to specific documents.[23]

_____

[17](...continued)
received numerous requests from the public, state agencies, and the U.S. Congress to
release this information.  No submitter can fairly say that those requests did not
sufficiently notify submitters of the possibility that the information might be released.

[18]5 U.S.C. § 552(b)(4).

[19]Merrill Lynch Capital Services, Inc., at pp. 1-2; Portland General Electric
Company, at pp. 2-3; Southern California Gas Company, at pp. 2-3.

[20]Merrill Lynch Capital Services, Inc., at pp. 2-3; Reliant Energy Services, Inc., et
al., at pp. 2-3.

[21]City of Vernon, California, at p. 3.

[22]Merrill Lynch Capital Services, Inc., at p. 2; Competitive Supply Group, at pp.
7-10; El Paso Merchant Energy, L.P., at p. 3; Dynegy Power Marketing, Inc., at p. 1, pp.
7-8.

[23]Californians for Renewable Energy (CARE), at p. 4 (bank account numbers on
CARE's exhibits containing checks from sellers to California Governor Davis); Portland
(continued...)

20030321-3018 Issued by FERC OSEC 03/21/2003 in Docket#: PA02-2-000

PA02-2-000, EL00-95-048, EL00-98-042, EL01-10-007 (not consolidated)        - 8 -

10.     While the Commission is reluctant to release information that might be considered commercially sensitive or that might involve ongoing contracts, the public's interest in reviewing and understanding the information that formed the basis for the Commission's decisions and reasons in the affected dockets represents an extraordinary set of circumstances that outweighs the alleged concerns about withholding competitively sensitive information. The public's need to know here involves the release of information in contracts subject to the Commission's jurisdiction, which overrides any concern that the information should remain concealed.[24] Likewise, tying the release of information to geographic and temporal limits, as suggested by several of the respondents, would inappropriately depart from our purpose here: to allow the public an opportunity to understand the full basis for our decisions. In any event, as a practical matter, the information to be released will largely fall within those geographic and temporal bounds, as the Commission's focus has been on the western markets in 2000 and 2001. Still, to understand those markets, in particular in the PA02-2-000 matter, the Commission needed to explore market matters beyond those boundaries and times, and the public deserves access to that information as well.

11.     Three respondents in particular objected to the release of certain information as competitively sensitive and for that purpose invoked FOIA Exemption 4.[25] UBS AG specifically raised confidentiality concerns regarding certain assets and intellectual property that UBS AG obtained from Enron, and which UBS AG believes Enron may have submitted to the Commission, including proprietary trading software source codes and system diagrams, proprietary trading/pricing models, and certain databases compiled

---

[23](...continued)
General Electric Company, at pp. 2-3 (all versions of its Energy Trading Policies and Procedures Manual submitted on April 19, 2002); Dynegy Power Marketing, Inc., at p. 2 (bank account information on a check Dynegy wrote to CARE).

[24]For the same reasons, the Commission rejects the argument of Merrill Lynch Capital Services, Inc. (at p. 3) that its request to refrain from disclosing information on its current long-term forward transactions is consistent with the reporting rules for public utilities for forward contracts based on competitive considerations in Order No. 2001-A. Moreover, Order No. 2001 does not contemplate confidential treatment of any of the filings. *Revised Public Utility Filing Requirements*, Order No. 2001, FERC Stats. & Regs. ¶ 31,127, *order on reh'g*, Order No. 2001-A, 100 FERC ¶ 61,074, *order on reh'g*, Order No. 2001-B, 100 FERC ¶ 61,342 (2002).

[25]UBS AG, at pp. 2-10; IDACORP Energy L.P., *et al.*, at Appendices A and B; Aquila, Inc., *et al.*, at pp. 3-5.

PA02-2-000, EL00-95-048, EL00-98-042, EL01-10-007 (not consolidated)        - 9 -

by Enron.[26]  UBS AG claimed that release of confidential proprietary information that it obtained pursuant to a license with Enron would cause competitive harm to UBS AG by allowing its competitors to use the information.  UBS AG also asserted that the information should not be released as it constitutes trade secrets.[27]  Pursuant to FOIA Exemption 4, the Commission is not prohibited from disclosing trade secrets and confidential commercial or financial information; rather, trade secrets and confidential information are exempt from mandatory disclosure.[28]  Similarly, the Commission is not prohibited from disclosing information under the Trade Secrets Act where disclosure is authorized by law.  See 18 U.S.C. § 1905.[29]  The Commission has statutory authority to disclose information where necessary, see, e.g., 16 U.S.C. § 797(d); cf. 15 U S.C. § 717m and 16 U.S.C § 825k, and indeed is invoking that authority here.[30]

12.    All three respondents also asserted that commercial information that was voluntarily submitted to the Commission is typically kept confidential under the FOIA Exemption 4.[31]  The Commission recognizes that the voluntary submission of

---

[26]UBS AG, at pp. 2-3, 8-9.

[27]UBS AG at pp. 6, 8-9.

[28]See 5 U.S.C. § 552(b)(4).

[29]Coverage of Exemption 4 of the FOIA is considered co-extensive with the Trade Secrets Act.  See Acumenics Research & Tech. v. DOJ, 843 F.2D 800, 805-07 & n.6 (4th Cir. 1988); see also National Parks & Conservation Ass'n v. Morton, 498 F.2d 765, 766 (D.C. Cir. 1974).

[30]Furthermore, pursuant to Article 25.5 of the licensing agreement between UBS AG and Enron, the parties expressly recognized that information may be required to be disclosed to governmental agencies.  See UBS AG, at Exhibit A.  Thus, UBS AG was aware at the time it entered into the licensing agreement that agencies such as the Commission might obtain the information.  Moreover, the Commission conditioned UBS AG's market-based rate authority on UBS AG's providing all information requested by Staff in its investigation in Docket No. PA02-2-000.  See Order Conditionally Accepting Market-Based Rate Schedule, 98 FERC ¶ 61,255, at pp. 62,020-21 (2002).  UBS AG knew or should have known that the Commission is not obligated to maintain the confidentiality of such information where, as here, it finds that release is in the public interest.

[31]Aquila, Inc., et al., at pp. 4-5; UBS AG, at p. 10; IDACORP Energy L.P., et al.,
(continued...)

PA02-2-000, EL00-95-048, EL00-98-042, EL01-10-007 (not consolidated)          - 10 -

information is one of the factors that the Commission may consider in deciding whether
to withhold information pursuant to FOIA Exemption 4.[32]  The Commission is not
required, however, to withhold information that is voluntarily submitted.  Such an
approach to the FOIA, which requires Federal agencies to release information, would
turn the statute on its head.  For like reasons, the Commission finds no merit in
IDACORP Energy L.P.'s argument that the Commission may not release the particular
information that the Commission's FOIA Officer, as affirmed by the General Counsel,
previously withheld.[33]  Axiomatically, the Commission is not bound by the decisions of
members of its staff.  Moreover, the Staff decisions reflected the Commission's position
at the time to maintain the confidentiality of the information while investigations and
other relating proceedings were pending.

13.    Aquila, Inc., et al., also asserted that release of this information would frustrate
the twofold justifications for Exemption 4: (1) encouraging cooperation by those who
voluntarily provide information to the government, and (2) protecting the rights of those
who must.[34]  The Commission acknowledges that disclosure of voluntarily submitted
confidential information here might jeopardize its ability in the future to get information
on a cooperative basis and could stymie future investigations if companies fear that the
Commission will make broad disclosures of information.  This extraordinary set of cases,
however, prompts the Commission to release voluntarily submitted information in order
to fulfill its mandate to "make public from time to time the information secured [under
the Federal Power Act], and to provide for the publication of its reports and
investigations in such form and manner as may be best adapted for public information
and use." 16 U.S.C. § 797(d).  The Commission is confident that companies will
recognize that the Commission must balance the public interest with the rights of the
companies supplying confidential information, and that the companies will continue to
voluntarily provide information to the Commission.  On the other hand, if they do not,
the Commission can use its subpoena power to obtain needed information.

_____

        [31](...continued)
at Appendix A.

        [32]See Critical Mass Energy Project v. Nuclear Regulatory Commission, 975 F.2d
871, 879 (D.C. Cir. 1992).

        [33]IDACORP Energy L.P., et al., at pp. 2-3.

        [34] Aquila, Inc., et al., at p. 9.

PA02-2-000, EL00-95-048, EL00-98-042, EL01-10-007 (not consolidated)          - 11 -

14.     Three respondents objected to the release of documents subject to an attorney-client privilege or an attorney work product privilege.[35]  Aquila, Inc., et al., further contended that the protection granted pursuant to the attorney work product is broader than protection granted for the attorney-client privilege; that a court would likely protect attorney work product and attorney client privileged information, and the Commission should too; that its decision to share information with the Commission constituted a limited waiver of the attorney-client and attorney work product privileges; and that release of this information would thwart the practice of companies seeking counsel to investigate and advise them to protect stockholders, potential stockholders, and customers.[36]

15.     While the attorney-client privilege is designed to encourage frank discussion between attorneys and their clients, it is lost when a communication made between an attorney and his client is made known to a third party, as is the case in the instant proceedings.  See Permian Corp. v. United States, 665 F.2d 1214, 1219 (D.C. Cir. 1981)("Any voluntary disclosure by the holder of such a privilege is inconsistent with the confidential relationship and thus waives the privilege.")(internal citation omitted).  Moreover, the Commission's regulations expressly provide that the Commission "retains the right to make determinations with regard to any claim of privilege, and the discretion to release information as necessary to carry out its jurisdictional responsibilities." 18 C.F.R. § 388.112(c); see also 18 C.F.R. § 1.b.20.  Under the circumstances here, the Commission finds that the public's need to have access to the data underlying Commission inquiries outweighs the admittedly important privileges that attach to the relationship between an attorney and his client.  Finally, while the Commission is sensitive to the possible impact of this order on companies' incentives to seek out legal counsel, we find that the potential impact is far outweighed by the many other incentives for companies to investigate potential wrongdoing.  The Commission does not believe that this order will keep reasonable people from seeking legal counsel to protect themselves and their shareholders from legal problems.[37]

_____

[35]Dynegy Power Marketing, Inc., at pp. 6-7; El Paso Electric Company, at pp. 4-7; and Aquila, Inc. et al., at pp. 5-10.

[36]Aquila, Inc., et al., at pp. 5-10.

[37]The Commission also rejects El Paso Electric Company's request, at pp. 4-5, that the Commission review each document individually to determine whether a privilege applies.  A document by document examination is unnecessary because the submitters knew or should have known all potential privileges and claims of confidentiality when
(continued...)

PA02-2-000, EL00-95-048, EL00-98-042, EL01-10-007 (not consolidated)      - 12 -

16.    One respondent objected to the release of settlement proposals and submissions on the grounds that, pursuant to Section 385.602(e) of the Commission's Rules of Practice and Procedure, they are not subject to discovery or admissible in evidence.[38]  The Commission agrees and is not inclined to release any settlement documents.  The records at issue here, however, should not include such documents.[39]

17.    Three respondents objected to the Commission's release of personal information on company employees, including conversations on audio tapes that are of a personal nature.[40]  The Commission recognizes that under FOIA Exemption 6,[41] it could withhold information where the identity of the individual is clearly recognizable as an unwarranted invasion of personal privacy.  Even then, however, the Commission may release the information if the public's right to disclosure outweighs the individual's right to privacy.[42] Here, at times the identity of the individuals whose voices can be heard on the audio tapes is difficult if not impossible to discern.  More to the point, even if the identities could be discerned, as may be the case with certain audio and written records, the individuals' communications and records were collected for reasons connected to the inquiries at hand.  For example, the audio tapes reveal trading activities.  The fact that in the course of those business transactions certain employees may have engaged in personal conversations is unfortunate, but not sufficient to override the public's need here to get the full record on a timely basis.  Preparing redacted versions of these matters

---

[37](...continued)
they filed comments on release.  Nothing presented by submitters justifies such a detailed search of this immense record, see *supra* note 1.  Further, such examination would unnecessarily delay the release of the documents, which is not in the public interest given the importance of allowing public access to information underlying our decision here.

[38]Reliant Energy Services, Inc., *et al.*, at pp. 5-6.

[39]The Commission is aware of one settlement proposal approved in an order issued on January 31, 2003.  *See* 102 FERC ¶ 61,108 (2003)(settlement involving Reliant).  As the document at issue there was submitted and considered in PA02-2-001, it is not covered by the March 5 Notice, and will not be released pursuant to this order.

[40]Reliant Energy Services, Inc., *et al.*, at pp. 1, 3-4, 6-8; Dynegy Power Marketing, Inc., at p. 5; Duke Energy Corporation, *et al.*, at p. 9 & n. 7.

[41]5 U.S.C. § 552(b)(6).

[42]*See Dep't of the Air Force, et al., v. Rose, et al.*, 425 U.S. 352, 372 (1976).

20030321-3018 Issued by FERC OSEC 03/21/2003 in Docket#: PA02-2-000

PA02-2-000, EL00-95-048, EL00-98-042, EL01-10-007 (not consolidated)        - 13 -

would be immensely time-consuming and would impermissibly delay the release of the information.  Also, for example, certain personnel records obtained in Docket No. PA02-2-000 revealed trading strategies as they were highlighted by the employees in their performance appraisals.  While the Commission would usually be inclined to protect the privacy of company employees in this regard, the current extraordinary situation calls for unusual action.[43]

18.    Two respondents argued that releasing certain documents prepared for confidential investigations being performed by other government agencies would threaten the integrity of these other investigations.[44]  For this purpose, they invoke FOIA Exemption 7, under which the Commission may protect records or information compiled for law enforcement purposes, but only to the extent that release of such records or information: "(A) could reasonably be expected to interfere with enforcement proceedings, (B) would deprive a person of a right to a fair trial or impartial adjudication . . . (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."[45]

---

[43]If there is personnel information, such as identification numbers (*e.g.*, social security numbers) and benefits plans, that is completely unrelated to the investigation and that if released could cause an individual serious harm, the companies should submit documents to the Commission no later than March 24, 2003, with the individual's personal information redacted. *See, e.g.*, Reliant Energy Services, Inc., *et al.*, at 7-8 (noting Reliant "stands ready" to submit transcripts with personal information redacted). The broad requests here that personnel information be withheld with nothing more is insufficient for the Commission to undertake the overwhelming task of combing the collectively massive records to cull out this type of information.

[44]Dynegy Power Marketing, Inc., at pp. 1, 3-6 & n. 1; Reliant Energy Services, Inc., *et al.*, at pp. 6-7.  IDACORP also references its arguments made previously with respect to a FOIA request that release of the information would interfere with the Commission's investigation.  IDACORP Energy L.P., at Appendix A at pp. 8-10.  As that investigation is to be concluded at the same time as the release of the information here, IDACORP's argument is moot.  *See Dickerson v. Dep't of Justice*, 992 F.2d 1426, 1431 (6th Cir. 1993)(reiterating that when an investigation is over and the purpose of it has expired, information should be disclosed).

[45]5 U.S.C. § 552(b)(7).

PA02-2-000, EL00-95-048, EL00-98-042, EL01-10-007 (not consolidated)          - 14 -

19.    Importantly, while each of the other agencies with an interest in the Commission's record was notified of the pending release of information, only one of them has officially requested that the Commission not release any particular document or documents.  The United States Attorney for the Southern District of Texas requested that certain documents be excluded from release, and sufficiently showed how release of this information would interfere with cases pending trial as well as ongoing and possible investigations, and could affect defendants' rights to a fair trial.[46]  For example, he explained how the release of this evidence would in essence trump the Federal Rules of Criminal Procedure, which controls discovery in criminal cases and allow defense counsel access to information from one company that is not necessarily relevant to what an indicted individual did at another company.  He also pointed out that disclosure of employee statements obtained during company internal investigations would allow defense counsel a preview of what others have said as well as who might be a logical target of further investigation.  Therefore, the Commission will withhold these specific documents.  No other respondent has shown how release of information will deprive it of a fair trial or impartial adjudication before the other agencies;[47] nor has any other respondent shown that other parties would not have access to particular documents under discovery rules.

20.    As noted in the March 5 Notice, the Commission will not release other Federal agencies' documents, pursuant to the Federal Records Act, 44 U.S.C. § 3510(b).  One respondent requested that, in the spirit of that act, the Commission should not release documents filed with other agencies and provided to the Commission as a courtesy.[48]  As the documents were provided to the Commission, they are Commission documents, and not subject to the Federal Records Act.  Therefore, unless they are covered by the request described in Paragraph 19, the Commission will release the documents.

---

[46]Cases pending trial include U.S. v. Michelle M. Valencia (Docket No. H-03-0024), and U.S. v. Todd Geiger (Docket No. H-02-712).

[47]*See Alexander & Alexander Servs. v. SEC,* No. 92-1112, 1993 WL 439799, at **10-11 (D.D.C. Oct. 19, 1993) (*appeal dismissed,* No. 93-5398 (D.C. Cir. Jan. 4, 1993)) (finding that the company "failed to meet its burden of showing how release of particular documents would deprive it of the right to a fair trial") (*citing Washington Post Co. v. United States Dep't of Justice,* 863 F.2d 96, 101-102 (D.C. Cir. 1988)).

[48]Duke Energy Corporation, *et al.*, at p. 8.

PA02-2-000, EL00-95-048, EL00-98-042, EL01-10-007 (not consolidated)          - 15 -

The Commission orders:

      The non-public documents collected in Docket No. PA02-2-000  and filed in response to the  Commission's November 20, 2002 and February 10, 2003, orders in Docket Nos. EL00-95-048, EL00-98-042, and EL01-10-007 will be released, as discussed in this order, no sooner than five days from the issuance of this order.

By the Commission.

( S E A L )

Magalie R. Salas,
Secretary.

20030321-3018 Issued by FERC OSEC 03/21/2003 in Docket#: PA02-2-000

# Appendix

20030321-3018 Issued by FERC OSEC 03/21/2003 in Docket#: PA02-2-000

**Respondents to March 5, 2003 Notice of Release of Confidential Documents**
**In PA02-2-000 and EL00-95-000, EL00-98-000, and EL01-10-000**

1. Aquila, Inc. and Aquila Merchant Services, Inc.
2. Californians for Renewable Energy (CARE)
3. City of Tacoma and the Port of Seattle
4. City of Vernon, California
5. Competitive Supplier Group
6. Duke Energy Corporation
7. Dynegy Power Marketing, Inc.
8. El Paso Electric Company
9. El Paso Merchant Energy, L.P.
10. Idacorp Energy L.P.; Idaho Power Company
11. Merrill Lynch Capital Service, Inc.
12. Northern California Power Agency
13. Portland General Electric Company
14. Public Utility District No. 1 of Snohomish County, Washington
15. Reliant Energy Services, Inc.
16. Southern California Gas Company
17. UBS AG
18. Williams Energy Marketing & Trading